IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ERIC MEYER, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE # 2:24-cv-02122-DDC-GEB |
| CITY OF MARION, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————————— | ) | |

**SHERIFF DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

**I.      Plaintiffs fail to allege official capacity or municipal liability.**

**A.  Soyez as policymaker.**

The Sheriff Defendants do not dispute that Soyez is a policymaker. But as set forth in their motion to dismiss, the 1AC must show the requisite degree of culpability and a direct causal link between the conduct and the violation to allege official capacity liability. *Bd. of Cnty Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). In fact, a plaintiff must demonstrate that the policymaker's decision "was the 'moving force' behind the injury alleged." *Tran v. Cty. Of Douglas*, 2021 U.S. Dist. LEXIS 226512, at *16 (D. Kan. Nov. 24, 2021). Plaintiffs fail to do so with well-pleaded facts in the 1AC; indeed, in arguing Soyez's involvement and culpability in their response, Plaintiffs rely primarily on the conclusory allegation that Soyez agreed to join an illegal conspiracy. (Doc. 63, p. 51). The Court need not accept such conclusory allegations as true. The 1AC does not allege, with any well-pleaded facts, that Soyez did any investigating, drafted the warrants, read the warrants, signed the warrants, presented the warrants, or executed the warrants. In attempting to lump Soyez in with Cody,[1] Plaintiffs hardly allege that Soyez was the "moving force" behind their injuries; on the contrary, if Soyez was removed

---

[1] This "lumping together" is most clearly illustrated by Plaintiffs' contradictory allegations about the decision to "take all" of the items from the Record's offices. *See* Doc. 44, ¶¶ 410, 427-428.

completely from the 1AC, the warrants still would have been sought and executed as part of the City's investigation.

Plaintiffs' citation to *Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010) to get around their failure to allege causation on the part of Soyez is misplaced. The cited language from *Dodds* dealt with individual supervisor liability under § 1983, which requires that a plaintiff show a "deliberate, intentional act by the supervisor," and also, "demonstrate an affirmative link between the supervisor and the violation." *Id.* 614 F.3d at 1195 (internal quotation marks and citations omitted). And demonstrating this affirmative link requires a showing of (1) personal involvement, (2) causation, and (3) a culpable mental state. *Id.* When conclusory allegations are stripped away, all three are lacking with regards to Soyez.

**B. Failure to train.**

Plaintiffs' response focuses solely on their failure to allege prior violations. Although this failure is a basis for dismissal, it is only part of the issue with the 1AC's failure to train claim, which is not supported by any well-pleaded facts. Not only are there no allegations of prior or related incidents, there are also no allegations at all about any aspect of Soyez's training. The 1AC simply concludes that Soyez "failed to properly train" his officers, without providing a single detail about the nature of training Soyez did or did not perform. (Doc. 44, ¶ 744). Utter conclusions, especially when coupled with a failure to allege prior violations, fall well short of the standard required to allege failure to train. *See Huff v. Reeves*, 996 F.3d 1082, 1093 (10th Cir. 2021). As the Tenth Circuit has noted, "[i]t is not enough to allege general deficiencies in a particular training program. Rather, a plaintiff must identify a specific deficiency in the entity's training program closely related to his ultimate injury." *Keith v. Koerner*, 843 F.3d 833, 838-39 (10th Cir. 2016) (citation cleaned up). Plaintiff has not plead or identified any specific deficiencies in Soyez's training and has not identified any prior instances that would suggest deliberate indifference. Plaintiffs' failure to train claim should be dismissed.

## II.     Plaintiffs' conspiracy claim also relies almost entirely on conclusions.

Plaintiffs' conspiracy claim relies on two types of allegations: unsupported conclusions and allegations of lawful conduct. Neither are adequate to state a claim. *Montoya v. City & Cnty. of Denver*, 2022 U.S. App. LEXIS 15338, at *8 (10th Cir. June 3, 2022); *Fraiser v. Evans*, 992 F.3d 1003, 1025 (10th Cir. 2021). With regard to Soyez, the response relies on the following allegations: (1) that Soyez was friends with Cody and encouraged him to apply for a job in Marion (which is not unlawful); (2) that Soyez did not want the Record to expose Cody's alleged personnel problems (which is conclusory); (3) that Soyez agreed to violate Plaintiffs' rights (which is a textbook example of a conclusory allegations the Court can ignore. *See Lee v. Kan. St. Univ.*, 2013 U.S. Dist. LEXIS 80592, at *36-37 (D. Kan. June 7, 2013)); and (4) that Soyez made the 100% correct and factual statement that he did not participate in the execution of the warrants (which is certainly not unlawful). (Doc. 63, pp. 42-43).  It is not illegal to make a job recommendation or make truthful statements about one's level of involvement. And "[c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim. *Bledsoe*, 53 F.4th 589, 609 (citation cleaned up). Aside from conclusory allegations or allegations of lawful conduct, there is nothing indicating that Soyez joined in a conspiracy to violate any of Plaintiffs' rights.

As for Christner, the response asserts that his conspiratorial objective was obvious because he "knew" the warrants were baseless and "tried to hide his involvement by refusing to sign the search warrant." (Doc. 63, pp 41-42). But that is not what the 1AC alleges. The 1AC does not allege Christner knew he was drafting baseless warrants; it alleges that he "did not do the investigation," and criticizes Christner for not having double-checked the City's investigation. (Doc. 44, ¶¶ 210-211, 215, 218-219). As Plaintiffs specifically alleged, "Christner knew all of the material facts listed above or would have known them had he performed even the most basic investigation." (Doc. 44, ¶ 227). And having

already alleged that Christner did not do the investigation, the latter is plausibly alleged, the former is not.

### III.   Plaintiffs fail to state a First Amendment claim against Soyez or Christner.

Plaintiffs cite *MacQuigg v. Albuquerque Pub. Sch. Bd. of Educ.*, 2015 U.S. Dist. LEXIS 199430, at *25-26 (D.N.M. Feb. 6, 2015), for the proposition that their retaliation claim is not duplicative of their "direct" first amendment claim because the elements are different. (Doc. 63, pp. 15-16). Notably, the *MacQuigg* court found that the retaliation claim in Count III of that case and the alleged "direct" claim based on exclusion from a public forum in Count II were "duplicative" of each other. *Id.* at *25. More to the point, the *MacQuigg* court noted that both Count II and Count III of that case required a plaintiff to demonstrate that a defendant's "adverse action was substantially motivated as a response to Plaintiff's protected speech." *Id.* at *24-25. And so, to the extent *MacQuigg's* analysis applies here, it is clear that Count I must be dismissed against Christner. There is not a single allegation indicating that Christner had any unlawful animus towards Plaintiffs or was substantially motivated by their protected conduct. And this omission is fatal to Plaintiffs' claims. As the Tenth Circuit has instructed, in a First Amendment claim, a plaintiff must show that "each individual defendant" was substantially motivated by an unlawful animus. *A.M. ex rel. F.M. v. Holmes*, 830 F.3d 1123, 1163 (10th Cir. 2016).

The same is true regarding Counts I and II against Soyez. As set forth in the Sheriff Defendants' motion to dismiss, Plaintiffs' assertion that Soyez was motivated by unlawful animus are conclusory and implausible. There are no well pleaded facts suggesting the Soyez was worried about any "blowback" or shared any of Cody's alleged animus. That is an unsupported conclusion imagined by Plaintiffs. Lastly, as set forth regarding the Fourth Amendment claim, below, Plaintiffs fail to allege causation or personal involvement by Soyez. For these reasons, Counts I and II should be dismissed against the Sheriff Defendants.

**IV.     Plaintiffs fail to state a Fourth Amendment claim against Soyez or Christner.**

The Sheriff Defendants recognize that Magistrate Judge Viar's signature does not, per se, excuse any alleged unlawful conduct. But such a signature "is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). Allowing suit in such cases is "an exception," and "the threshold for establishing this exception is a high one" as "it should be." *Id.* at 547. Plaintiffs claim that this exception should apply for various reasons. First, they point to the KBI's subsequent investigation, in which KDOR allegedly made it clear that no crime had been committed. That is simply irrelevant. The Court is not to look at the officers' conduct with 20/20 hindsight, and "[q]ualified immunity applies equally to reasonable mistakes of law and fact." *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014). It also has little impact on Soyez—who is not alleged to have investigated the crimes or drafted or reviewed the warrants—or Christner—who did not conduct the investigation but relied on the City's investigation as to the legality of accessing KDOR records, as set forth in warrant applications. (Doc. 56-1, pp. 6-7). Again, Christner was entitled to rely on the City officers, and was not required to conduct an independent investigation of his own. *Eckert v. Dougherty*, 658 F. App'x 401, 407 (10th Cir. 2016); *Joseph v. Shepherd*, 211 F. App'x 692, 698 (10th Cir. 2006); *Miller v. City of Nichols Hills Pol. Dep't*, 42 F. App'x 212, 216 (10th Cir. 2002). *Favela v. City of Las Cruces*, 398 F. Supp. 3d 858, 914 (D.N.M. 2019). Plaintiffs also rely on the allegation that the warrants were not submitted under oath or affirmation, even though none of the Sheriff Defendants are alleged to have had any involvement in presenting or signing the warrants.[2]

---

[2] Although Plaintiffs rely on the conclusory allegation that Christner "knew" the warrant was not signed under oath or affirmation, there are no well pleaded facts supporting that conclusion. On the contrary, Christner was entitled to rely on Judge Viar's notation on the warrant indicating that Cody had appeared before her.

Plaintiffs next point to the alleged lack of particularity with the warrants, which again, has no relevance to Soyez, given his level of involvement and that he did not draft or execute the warrants. As for Christner, Plaintiffs again rely on 20/20 hindsight and information that Christner did not possess when the warrants were executed. This was not Christner's investigation, and he was executing a judge-signed warrant. To meet the "high burden" of establishing liability, Plaintiffs must show that, from the face of the warrant, its obvious that they were "so lacking" in particularity that no reasonable officer could have concluded that a warrant should issue. *Rathbun v. Montoya*, 628 F. App'x 988, 994 (10th Cir. 2015); *United States v. Pulsifer*, 588 F. App'x 800, 804 (10th Cir. 2014); *Cruz v. City of Albuquerque,* 2019 U.S. Dist. LEXIS 36475, at *59 (D.N.M. March 6, 2019). Plaintiffs simply conclude, without providing any legal analysis, that there was no nexus to search the Meyer residence. But as the Tenth Circuit has recognized:

> When the search is of a home, the good-faith exception applies if the affidavit supporting the warrant establishes a minimally sufficient nexus between the illegal activity and the place to be searched. This nexus requirement is less than what is required to show probable cause. To find a minimal nexus, there need not be hard evidence or personal knowledge of illegal activity linking a Defendant's suspected unlawful activity to his home.

*United States v. Cotto*, 995 F.3d 786, 796-797 (10th Cir. 2021) (citation cleaned up). Christner was entitled to rely on the City's investigation, and the warrant's representation that Meyer had received evidence of a crime from Zorn, and that, because he often worked from home, such evidence may be found there. Lastly, the 1AC fails to establish liability on the part of the Sheriff Defendants for exceeding the scope of the warrant. Although Plaintiffs try to exaggerate Soyez's involvement and the direction he can exercise over the City's independent Chief of Police, Soyez is not alleged to have drafted, read, or executed the warrants in question and cannot be responsible for exceeding their scope. Christner, likewise, acted reasonably in reliance on both the language of the warrant and direction of Cody. As set forth in the Sheriff Defendants' motion to dismiss, the Fourth Amendment claim against the Sheriff Defendants should be dismissed.

## V.     Plaintiffs fail to meet their qualified immunity burden.

"When a defendant raises the qualified-immunity defense, the onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019).  Importantly, "it is the Plaintiffs' burden to show with respect to each claim" that qualified immunity does not apply. *Walton v. Gomez*, 745 F.3d 405, 418 (10th Cir. 2014). And when numerous § 1983 claims are asserted against numerous defendants for their separate conduct, a plaintiff's qualified immunity burden must be "more particularized" and "defendant specific." *Fullen v. City of Salina*, 2021 U.S. Dist. LEXIS 187856, at *25 (D. Kan. Sept. 30, 2021) (citing *Pahls v. Thomas*, 718 F.3d 1210, 1218 (10th Cir. 2013). As the Tenth Circuit has explained regarding Plaintiffs' burden:

> [T]he burden was on Plaintiffs to overcome the presumption of immunity that arose as to each individual caseworker once the caseworkers raised the qualified immunity defense. Pahls tells us exactly this. There we explained that **to state a viable § 1983 claim and overcome a qualified immunity defense, plaintiffs must establish that each defendant violated plaintiffs' clearly established constitutional rights. Plaintiffs must do more than show that defendants, as a collective and undifferentiated whole, were responsible for those violations.**

*Matthews v. Bergdorf*, 889 F.3d 1136, 1145 (10th Cir. 2018) (citation cleaned up) (emphasis added). The Tenth Circuit has also cautioned that the Court should "exercise special care to define the clearly established right at issue on the basis of the specific context of the case and, in so doing, avoid defining the case's context in a manner that imports genuinely disputed factual propositions." *Holmes*, 830 F.3d at 1135 (internal quotation marks and citations omitted). And of course, the relevant right must not be defined to too high of a level of generality; rather, the clearly established law must be particularized to the specific facts of the case. *St. George v. City of Lakewood*, 2024 U.S. App. LEXIS 19757, at *14-15 (10th Cir. Aug. 7, 2024).

In light of this standard, Plaintiffs have failed to meet their qualified immunity burden with respect to the Sheriff Defendants. In their response, they have done exactly what the Tenth Circuit cautions against. They define the rights at issue at the highest level of generality imaginable and make no effort to apply any case law to the specific conduct of either of the Sheriff Defendants. (Doc. 63, pp. 47-48). There is no binding caselaw indicating that the conduct of Soyez or Christner, as alleged, violated a clearly established right, and Plaintiffs make no effort to address their individual conduct or identify case law that would apply to it. Rather, they rely on generalities applied collectively to all defendants. And so, they fail to meet their qualified immunity burden.

**VI.     Plaintiffs fail to state a claim under the Privacy Protection Act.**

The PPA creates civil liability for a governmental entity if its employees "search for or seize work product materials possessed by a person reasonably believed to have a purpose to disseminate" those materials. 42 U.S.C. § 2000aa(a). And work product materials are defined as materials that are used (1) in anticipation of communicating such materials to the public, (2) are possessed for the purposes of communicating such materials to the public; **and** (3) include mental impressions, conclusions, opinions, or theories of the person who prepared such materials. 42 U.S.C. § 2000aa-7(b).

No such documents were targeted. No such documents were the subject of the search warrant. The warrants at issue sought evidence of alleged identity theft. It simply did not seek documents that were going to be published, and certainly did not search for any documents that included any party's mental impressions or conclusions. Soyez did not seize a thing; Christner executed a judge-signed warrant searching for documents that the Record specifically indicated it did not intend to publish, and does not fit the definition of work product materials. In trying to get around this fact, Plaintiffs point to Meyer's representation that the Record was considering writing a story about how law enforcement allowed Newell to drive without a license. But the warrants did not call for the search or

seizure of any documents related to such a story, and there is no allegation that any such documents were seized. Likewise, the fact that Cody and Hudlin—two City officers—looked at Gruver's file on Cody also has nothing to do with the Sheriff Defendants and does not create any liability for the County. Lastly, the fact that other data may have incidentally been seized does not create liability under the PPA. *Times Publ'g Co. v. United States*, 2023 U.S. Dist. LEXIS 203468, at *16-17 (M.D. Fla. Sept. 22, 2023); *see also Davis v. Gracey*, 111 F.3d 1472, 1480-81 (10th Cir. 1997) (recognizing that incidental seizure of data is not per se unlawful). At the end of the day, "work product materials" have a specific definition, and Plaintiffs do not allege that such materials were searched for or seized by the Sheriff Defendants.

## VII.    Conclusion

For the reasons set forth herein, and in the Sheriff Defendants' Motion to Dismiss, the Court should dismiss Plaintiffs' claims with prejudice for failure to state a claim upon which relief may be granted.

Respectfully submitted,

WATKINS CALCARA, CHTD.

s/      JEFFREY M. KUHLMAN
Jeffrey M. Kuhlman, #26825
1321 Main Street - Suite 300
P.O. Drawer 1110
Great Bend, Kansas  67530
 (620) 792-8231  Fax (620) 792-2775
jkuhlman@wcrf.com
Attorneys for Defendants Marion Co. Board of Commissioners, Jeff Soyez and Aaron Christner

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of September, 2024, I electronically filed the above and foregoing Reply in Support of Motion to Dismiss Amended Complaint by using the CM/ECF system which will send a notice of electronic filing to registered counsel.

s/      JEFFREY M. KUHLMAN
Jeffrey M. Kuhlman, #26825